UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                Plaintiff,        Case No. 15-20338

v.                                   Judith E. Levy
                                   United States District Judge
Christopher A. Gandy,

                Defendant.

_____/

**OPINION AND ORDER DENYING WITHOUT PREJUDICE
DEFENDANT'S MOTION FOR
<u>COMPASSIONATE RELEASE [260]</u>**

On August 23, 2017, this Court entered judgment after Defendant Christopher Alan Gandy was found guilty for mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341, interstate transportation of money taken by fraud in violation of 18 U.S.C. § 2314, aggravated identity theft in violation of 18 U.S.C. § 1028A, and engaging in illegal monetary transaction in violation of 18 U.S.C. §1957. (ECF No. 185, PageID.1176.) The Court sentenced Defendant to 72 months' imprisonment. (*Id*. at PageID.1177.) Defendant appealed (ECF No. 186),

and on June 7, 2019, the Sixth Circuit affirmed the Court's judgment. (ECF No. 246.)

Defendant has been serving his sentence at Federal Prison Camp Montgomery in Montgomery, Alabama (ECF No. 260, PageID.3719.) He now seeks compassionate release because of COVID-19. (ECF No. 260.)

For the foregoing reasons, Defendant's motion is DENIED WITHOUT PREJUDICE.

**I. Background**

On March 13, 2020, the President of the United States declared a national emergency due to COVID-19. *Proclamation on Declaring a national Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, The White House (Mar. 13, 2020) https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/. On March 22, 2020, the Governor of Michigan issued the following statement: "The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved

vaccine or antiviral treatment for this disease." Executive Order, No. 2020-20 (Mar. 22, 2020).

In the short period of time since the national emergency was declared, the exceptionally dangerous nature of the COVID-19 pandemic has become apparent. On March 10, 2020, the Governor of Michigan announced the state's first two cases of COVID-19 and simultaneously declared a State of Emergency. Executive Order, No. 2020-4 (Mar. 10, 2020). The number of new cases is growing exponentially. As of August 10, 2020, that number is now at 97,306 confirmed cases and 6,526 reported deaths. *See Coronavirus*, Michigan.Gov, https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html. COVID-19 has a high risk of transmission, and the number and rate of confirmed cases indicate broad community spread. Executive Order, No. 2020-20 (Mar. 22, 2020).

On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present[] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional*

*and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. Specifically, the CDC noted that many detention conditions create a heightened risk of danger to detainees. These include: low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing). *Id*.

The CDC recommended that all correctional facilities take preventative measures, including: ensuring an adequate supply of hygiene and medical supplies, allowing for alcohol-based sanitizer throughout facilities, providing no-cost soap to all inmates for frequent handwashing, cleaning and disinfecting frequently touched surfaces several times per day, performing pre-intake screening and temperature checks for all new entrants, increasing space between all detained persons to at least six feet, staggering meals, and having healthcare staff perform regular rounds. *Id*. Even if all of the CDC's interim

4

recommendations are followed, and reports suggest that they are not, the Court is concerned that such measures will prove insufficient to stem deadly outbreaks. *See, e.g.*, *New York City Board of Correction Calls for City to Begin Releasing People From Jail as Part of Public Health Response to COVID-19*, N.Y.C. Bd. of Corr. (Mar. 17, 2020), https://www1.nyc.gov/assets/boc/downloads/pdf/News/2020.03.17%20-%20Board%20of%20Correction%20Statement%20re%20Release.pdf (arguing that, despite the "heroic work" of Department of Correction and Correctional Health Services staff "to prevent the transmission of COVID-19 in the jails and maintain safe and humane operations, the City must drastically reduce the number of people in jail right now and limit new admissions to exceptional circumstances"). Indeed, on March 26, 2020, Attorney General Barr issued a separate directive ordering the Director of the Bureau of Prisons to "prioritiz[e] home confinement as appropriate in response to the COVID-19 pandemic . . . to protect the health and safety of BOP personnel and the people in our custody." *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, Att'y Gen. (Mar. 26, 2020).

Research shows that prisoners and jail detainees are more likely than the general population to report experiencing infectious diseases, indicating that these individuals face a heightened risk during this pandemic. Laura M. Maruschak *et al.*, *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, U.S. Department of Justice, Bureau of Justice Statistics, (2016), https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf. By way of example, on March 24, 2020 there was one prisoner who tested positive for COVID-19 in the Michigan prison system. Gus Burns, *Michigan prisons prep for possibility of coronavirus outbreak among inmate population*, M-Live (Mar. 26, 2020). As of August 9, 2020, the Michigan Department of Corrections confirmed that there are 4,128 cases of COVID-19 and that 68 people have died in its prisoner population. *MDOC Response and Information on Coronavirus (COVID-19)*, MDOC, at https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337 (last updated Aug. 9, 2020).

Nationally, Bureau of Prison (BOP) detention facilities across the country are experiencing similar trends. As of August 10, 2020, BOP has

confirmed at least 1,326inmates testing positive with COVID-19, 9,500 recovered inmates, and 111 deaths among federal inmates. Among BOP staff, there have been 763 staff recovered with COVID-19, and 580 testing positive as of July 29, 2020; there has been one BOP staff member death. *Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. The Court understands and appreciates the severity of the situation.

## II. Legal Standard

Defendant seeks compassionate release and reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The relevant provision provides:

> (c) The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of . . . the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of

> the original term of imprisonment), after considering the factors set forth in section § 3553(a) to the extent that they are applicable, if it finds that—
>
> i) extraordinary and compelling reasons warrant such a reduction.

*Id.*

There are two key questions of law in compassionate release cases. The first is whether a defendant satisfies the statutory requirement to either "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait 30 days "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* The second is whether extraordinary and compelling reasons, as well as the defendant's own history and characteristics, warrant a reduction of the defendant's sentence. *Id.* The latter is the issue before the Court, as neither party disputes that Defendant has exhausted his administrative remedies.

### III. Analysis

#### A. *Extraordinary and Compelling Reasons Warranting Reduction of Sentence*

There are three components to a compassionate release merits-analysis: 1) whether extraordinary and compelling reasons warrant a

reduction in sentence, as described by the United States Sentencing Commission; 2) whether the § 3553(a) factors—"to the extent that they are applicable"—render the reduction inappropriate; and 3) whether Defendant would be a danger to the public.

In defining "extraordinary and compelling reasons," the compassionate release statute directs the Court to consider the United States Sentencing Guidelines. 18 U.S.C. §3582(c). United States Sentencing Guideline § 1B1.13 articulates that extraordinary and compelling circumstances exist, in relevant part, in the following instances:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or

9

> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id.*

To demonstrate that the COVID-19 pandemic represents "extraordinary and compelling circumstances" justifying compassionate release, Defendant must show that he has underlying medical conditions that increase his risk of a dire outcome from COVID-19. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.") Here, Defendant does not argue that he has any underlying health conditions that place him at increased risk of severe illness and death from a COVID-19 infection. Instead, he bases his motion for compassionate release on "the devastating effects of COVID-19 to someone such as

Defendant Gandy." (ECF No. 260, PageID.3712.) In his request for compassionate release filed with the warden, Defendant wrote that "given the steadily growing death toll and the apparent continued spread of the virus throughout the prison system due to no social distancing, open dorm rooms and no testing has created an 'extraordinary and compelling reason' warranting my reduced sentence." (ECF No. 260, PageID.3718.) However, Gandy claims no particularized susceptibility to the virus, such as any of the conditions identified by the Centers for Disease Control and Prevention (CDC).

The Court congratulates Defendant on completing the RDAP and on his education transcript while at FPC Montgomery, but because Defendant has not alleged that he is at a higher risk of a dire outcome or death from COVID-19, extraordinary and compelling circumstances do not justify compassionate release.

In conclusion, Defendant has not shown that extraordinary and compelling reasons justify his release, and the Court therefore need not analyze the factors set forth in 18 U.S.C. §3553(a).

**IV. Conclusion**

11

For the reasons set forth above, the Court DENIES Defendant's motion for compassionate release without prejudice. Defendant may renew his motion should his medical conditions change, or should he present evidence demonstrating that he does have underlying conditions that increase his likelihood of a dire outcome from COVID-19 while confined.

IT IS SO ORDERED.

Dated: August 11, 2020  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 11, 2020.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager